IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**SHANTARIA LADEDRA THOMAS**             **PLAINTIFF**

**v.**            **CIVIL ACTION NO. 4:20-cv-204-JMV**

**COMMISSIONER OF**
**SOCIAL SECURITY**             **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of an application for supplemental security income. The undersigned held a hearing on February 10, 2022. Having considered the record, the administrative transcript, the briefs of the parties, the oral arguments of counsel and the applicable law, the undersigned finds the Commissioner's decision is supported by substantial evidence and that said decision should be affirmed.

### Standard of Review

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

## Statement of the Case

The Plaintiff was born on July 21, 1985, and was a younger individual on the alleged disability onset date. (Tr. 20). The ALJ found that the Plaintiff has a limited education and no past relevant work. (Tr. 20).

On February 7, 2019, Ms. Thomas protectively filed her application for SSI, alleging her disability commenced on April 5, 2017.[1] Ms. Thomas' claim was denied initially on May 16, 2019, and upon reconsideration on May 30, 2019. Thereafter, Ms. Thomas filed a written request for hearing, which was received on June 13, 2019. A telephonic hearing was held before Administrative Law Judge Patricia Melvin on June 2, 2020. (Tr. 28-52). Plaintiff, her attorney, and Kathy Smith, an impartial vocational expert, appeared at the hearing.

---

[1] The Claimant, through her representative, amended the alleged onset date to the protective filing date, February 7, 2019, at the administrative hearing.

After reviewing the evidence, the ALJ issued her decision on June 10, 2020, concluding that Plaintiff was not disabled for purposes of the Act (Tr. 11). Although supplemental security income is not payable prior to the month following the month in which the application was filed, the ALJ noted that she considered the complete medical history consistent with 20 C.F.R. § 416.912. (Tr. 10). The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of February 7, 2019 (Tr. 12). At step two, the ALJ determined Plaintiff's obesity and osteoarthritis of both knees constituted severe impairments. (Tr. 13). While Ms. Thomas was also found to have had a mild disc herniation at L3-4, very mild disc bulges at L4-5 and L5-S1, and depression, these medical conditions were found to be non-severe. (Tr. 13). Upon reviewing Ms. Thomas' medical records related to her back pain, the ALJ noted that she "received little subsequent treatment for back pain" following her August 14, 2018, visit to Delta Regional Neurological Center. (Tr. 13). As for Ms. Thomas' medical records related to her alleged mental condition, the ALJ found that "the evidence of record contains no objective evidence that the claimant had limitation in any of the four areas of mental functioning." (Tr. 14). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment for presumptive disability (Tr. 14).

Next, the ALJ determined that Plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 CFR § 416.967(a) (Tr. 15). In her opinion, the ALJ recognized that "[a]t the hearing, the claimant testified that she had chronic pain in her back and bilateral knees. She also testified that she experienced chronic swelling in her feet, worse on the left, and shortness of breath. The claimant alleged the inability to bend or squat, and she testified that she

used a cane for ambulation. She alleged the inability to stand for more than thirty minutes at one time." (Tr. 15). However, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms was not entirely consistent with the medical evidence and other evidence in the record. (Tr. 15). The ALJ cited to Ms. Thomas' medical records to support these findings. The ALJ also considered the opinions of the State agency medical consultants, but found them to be unpersuasive because they were inconsistent with the remaining record. (Tr. 19). The ALJ noted Ms. Thomas' obesity, and recognized that "obesity can cause limitation of function, and the combined effects of obesity with other impairments may be greater than might be expected without obesity." (Tr. 20). However, the ALJ found no objective evidence to support the claimant's need to use a cane for ambulation. (Tr. 20; 394-396).

At step four, the ALJ found Plaintiff had no past relevant work (Tr. 20). At step five, considering Plaintiff's age (33 as of the amended alleged disability onset date), education (limited education), and RFC, a finding of "not disabled" was directed by application of Medical-Vocational Rule ("Grid Rule") 201.24 (Tr. 21). Accordingly, the ALJ determined Plaintiff was not disabled for purposes of the Act, and therefore she was not entitled to receive SSI during the relevant period (Tr. 21).

On September 25, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's June 10, 2020, decision the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g) (Tr. 1).

## Discussion

The Plaintiff raises two issues, which will be addressed in turn below.

    **A)    Did the ALJ properly determine that Plaintiff's depression did not qualify as severe at Step 2, and therefore did not include any mental limitations in the RFC?**

As an initial matter, Plaintiff's claim that the ALJ did not evaluate her mental impairment under the proper standard is without merit. *See* Pl.'s Br. at 4-5. The ALJ noted that, pursuant to the holding in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), Plaintiff's mentally determinable impairment of depression did not qualify as severe (Tr. 13; 18 (citing same)). The ALJ further noted that she considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), also known as "Paragraph B" criteria. (Tr. 13). Thus, Plaintiff's contention that the ALJ used the wrong step two standard is without merit.

Turning to the substantive question of whether Plaintiff met her burden to show she had severe depression during the relevant period, the ALJ noted that the evidence showed normal mental findings and no objective limitations related to Plaintiff's mental abilities (Tr. 13-14). The Act specifically requires that an allegedly disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques" that show work-related functional limitations. *See* 42 U.S.C. §§ 423(d)(1)(A), 423(d)(3). In the absence of clinical findings demonstrating that functional limitations are present, the agency does not possess the discretion to base a finding of disability on the claimant's reported symptoms or alleged limitations. *Randall v. Astrue*, 570 F.3d 651, 657-58 (5th Cir. 2009) ("the Act and the regulations 'separate the question of the impairment's existence from the question of its severity'").

The mere presence of a diagnosed or observable medical condition does not establish the presence of any particular degree of impairment or functional loss unless there are clinical findings showing that work-related functional limitations have resulted from these changes. *See Hames v.*

*Heckler*, 707 F.2d at 162, 165 (5th Cir. 1983); *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) ("a showing of the mere presence of a condition is not sufficient" to establish impairment). Rather, to establish that a severe impairment is present, a claimant must meet her burden of demonstrating (1) a functional impairment, (2) attributable to a medically determinable impairment, that (3) limits her ability to perform basic work activities. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). There is no burden on the Commissioner to prove the absence of a claimant's alleged impairments. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant); *see also Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (Plaintiff has the burden to present medical evidence that supports her claim of a severe impairment). Without clinical evidence establishing signs of functional limitation, a claimant will properly be found to lack such limitation. See 20 C.F.R. § 416.928(b).

The Commissioner correctly noted that Plaintiff did not allege she was disabled due to a mental impairment, either initially or on appeal to the agency, or even at the administrative hearing when the ALJ asked Plaintiff what impairments prevented her from working, until prompted by her attorney half-way through the hearing (Tr. 36 (initially listing only physical problems at the hearing as the reason she could not work), Tr. 43-44 (questioned by attorney at the administrative hearing about her mental health treatment, and responding that she was too stressed to work). *See Domingue*, 388 F.3d at 463 (individual's failure to allege impairment and failure to show impairment affected ability to work substantiate ALJ's determination of no medically determinable impairment).

As the ALJ noted, Plaintiff's medical examinations during the period at issue did not

6

demonstrate functional limitations related to her depression (Tr. 14). Furthermore, as the Defendant stated at the hearing on February 10, 2022, there was no questioning to the vocational expert, Ms. Smith, regarding Ms. Thomas' mental or non-exertional limitations.

A brief review of Ms. Thomas' medical records show that on February 7, 2019, she did not complain of any mental symptoms, and instead appeared cooperative and pleasant (Tr. 539). During a counseling session on March 31, 2020, she presented with a stable mood (Tr. 14). She was "okay" during her April 16, 2020, counseling session, admitting she had increased social engagement, although she was having difficulty with Covid-19 restrictions (Tr. 14). She complained of irritability and "low mood" on May 18, 2020, when she sought a Covid-19 test due to "possible exposure from the general public," but her provider observed appropriate mood and affect (Tr. 14). Plaintiff admitted she had "disproportionate" irritability due to a close contact repeatedly telling her to get a Covid-19 test (Tr. 563-564). The ALJ properly determined that while Plaintiff had a medically determinable impairment of depression, the evidence failed to support that such impairment led to any limitations; therefore, it did not qualify as "severe" during the relevant period (Tr. 13).

Plaintiff's reliance on her subjective complaints fails to show the requisite objective findings that would support a finding of severe depression. *See* Pl.'s Br. at 3-6; *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (the ALJ need not give greater weight to subjective complaints than to the objective medical evidence). Moreover, even assuming step two error for the sake of argument, any such error would be irrelevant because the ALJ proceeded past step two to step five in the sequential evaluation, properly considering all of Plaintiff's impairments at subsequent steps (Tr. 19-26). *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Burqette v. Colvin*, 2013 WL

3776291, at *3 (W.D. La. Jul. 15, 2013) (recognizing that no prejudice exists because "once a severe impairment is determined to exist, all medically determinable impairments [including non-severe ones] must be considered in the remaining steps of the sequential analysis").

Therefore, Plaintiff's claim of reversible error as to the first issue cannot stand.

**B)** **Did the ALJ properly consider the effects of Claimaint's pain in the RFC?**

Plaintiff next argues that the ALJ improperly assessed her knee pain and low back pain, but she fails to show reversible error. *See* Pl.'s Br. at 6-7. First, the Commissioner points out that the ALJ found that Plaintiff had severe bilateral knee osteoarthritis, and also found that while she had a medically determinable impairment of low back pain, the evidence did not support that this impairment qualified as a severe impairment (Tr. 13).

With respect to her low back pain, the ALJ pointed out that Plaintiff received intermittent treatment for low back pain in 2013, 2014, and 2018, but that she received minimal further treatment, including minimal treatment during the relevant period for back pain (Tr. 13). *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (lack of treatment is an indication of non-disability). Sparse, conservative treatment weighs against a finding of disabling pain. *See Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986). Plaintiff fails to point to objective evidence supporting any limitations related to her back pain during the relevant period. Thus, Ms. Thomas fails to show error with respect to the ALJ's RFC assessment for sedentary work.

The Fifth Circuit has affirmed that the ALJ has the sole responsibility to determine RFC and has held that "the ALJ properly interpret[s] the medical evidence to determine [a claimant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). Furthermore, the RFC is the most a claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). The RFC assessment is based on "all of the relevant medical and other evidence" (20 C.F.R. §

8

416.945(a)(3)), including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 SSR LEXIS 5, at *13-14. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007), citing *Holman v. Massanari,* 275 F.3d 43 (5th Cir. 2001).

In her opinion, the ALJ noted that Plaintiff's primary complaints and treatment concerned pain in her knees (Tr. 18). Nonetheless, the ALJ noted that "[p]hysical examinations throughout the relevant period found limited range of motion and crepitus in the right knee, but the claimant generally reported receiving either significant or adequate pain relief with her medication regimen." (Tr. 19).

Further, on February 7, 2019, Plaintiff admitted she had adequate relief from pain with medication (Tr. 18). *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citations omitted) (where medication or treatment remedies or controls a medical impairment, such medical impairment is not disabling). Plaintiff complained of knee pain on February 14, 2019, where she presented with mild effusion of the right knee and slightly decreased range of motion, but normal motor strength and sensation testing (Tr. 18). By April 11, 2019, despite declining a recommended scope surgery on her right knee and having right knee instability, Plaintiff reported adequate pain relief from her current regimen (Tr. 18). Later, on August 8, 2019, she reported "significant" pain relief from her current regimen (Tr. 18).

Plaintiff received treatment from the Mississippi Sports Medicine and Orthopedic Center, where on August 28, 2019, she was evaluated for bilateral knee pain, stating walking and standing (but not sitting) increased her pain (Tr. 19). She had full range of motion in both knees with crepitus

9

but no instability (Tr. 19). The orthopedist stated she had no surgical options but prescribed a knee brace and stated that weight loss would help (Tr. 19).

When she returned to Mississippi Sports Medicine on October 1, 2019, Plaintiff complained of right knee pain, but her left knee had no tenderness, swelling, or crepitus, and she exhibited normal strength, sensation, reflexes, and normal gait (Tr. 19). After a right knee injection on October 9, 2019, Plaintiff stated she had full 100% relief from pain, which she again admitted to after injections on October 16, 2019, and December 5, 2019 (Tr. 19). *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling). On February 27, 2020, the claimant reported falling twice since her previous visit secondary to pain in her right lower extremity, but she reported receiving good relief from pain with her current medication regimen. (Tr. 19). An examination appeared unchanged from her previous visit. (Tr. 19).

The ALJ further discussed the State agency medical consultants' prior administrative findings that Plaintiff was limited to slightly less than light work but found that their findings were not supported by the record and inconsistent with the above evidence, such that Plaintiff required additional limitations (Tr. 24). This undersigned finds substantial evidence supports the Commissioner's findings with regard to the RFC that Plaintiff was assigned.

The Defendant correctly noted that responsibility for fact-finding in any disability case resides with the ALJ, whose findings are subject to judicial review only to check for compliance with law and the support of substantial evidence (more than a mere scintilla but less than a preponderance). *See Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). The Court finds that in this instance, the ALJ supported her findings with attention to the full record.

## Conclusion

For the reasons stated above, the undersigned finds that the Commissioner's decision should be and is hereby affirmed.

**SO ORDERED** this, the 10th day of February, 2022.

/s/ Jane M. Virden
U.S. Magistrate Judge
